UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:                                                               CASE NO.: 3:08-bk-07670-JAF

        PHILLIP A. WALKER
            Debtor (s).
_____/

        PHILLIP A. WALKER
            Plaintiff (s)                            Adv. No. 08- 418
v.

CLEARPOINT FINANCIAL SOLUTIONS, INC.
d/b/a CREDIT COUNSELORS AND CDC DEBT COUNSELING
            Defendants.
_____/

**RESPONSE TO MOTION FOR SANCTIONS FILED BY CLEARPOINT**

PHILLIP A. WALKER, responds to the Motion for Sanctions filed by CLEARPOINT FINANCIAL SOLUTIONS, INC. and states:

**INTRODUCTION**

On December 19, 2008, the Walker filed this action against the Defendant based upon three separate causes of action. The first cause of action was avoidance of fraudulent transactions. The second was an 11 U.S.C. § 526 action based upon the failure of the Defendant to provide required pre-bankruptcy disclosures to Walker. Finally, the third cause of action was a breach of fiduciary duty based upon the existence of a trust account managed by the Defendant for the benefit of Walker.

Walker then moved to amend his complaint on April 30, 2009 based upon documentation provided by the Defendant in its answer and motion to dismiss. However, the Defendant has responded to the Motion to Amend with a Motion for Sanctions. The Defendant has alleged in its Motion for Sanctions that the initial complaint was not brought in good faith and that the Amended Complaint is frivolous. See Motion for Sanctions, ¶ 6.

1

Both allegations are without merit. The Defendant answered the initial complaint of Walker several months prior and did not suggest that sanctions were appropriate at that time. See *In re Talisman Marina, Inc.*, 393 B.R. 774, 777 (Bankr.M.D.Fla.2008), rehearing denied 393 B.R. 1778 (Bankr.M.D.Fla.2008) (Delay of 8 months in filing motion for sanctions after allegedly offense petition warranted denial of Motion). The time for the Defendant to suggest that the Initial Complaint was sanctionable has long passed. Secondly, the filing of the Amended Complaint is justified based upon the documentation provided by the Defendant in response to the Initial Complaint and other information available to Plaintiff at the time of the filing of the initial complaint.

## RELEVANT FACTS

On or about January 9, 2008 Walker entered into an agreement with the Defendant. This agreement required the Debtor to remit monthly payments to the Defendant who would use that money to "negotiate" settlements with the Debtor's creditors. The Debtor entered into the agreement based on representations of the Defendant that he would not have to file for bankruptcy relief if he agreed to permit the Defendant to "eliminate debts" through the Defendant's exclusive debt elimination program. The program was to last 42 months and required payments of $1,098.00 per month by Walker.

The program was a complete sham as shown by the documents attached to the Motion for Sanctions. See Client Trust Activity – Exhibit C of Motion for Sanctions. For example, Bank of America was being paid $400.00 per month through the Debt Management Plan (DMP) by the Defendant. The interest on the Bank of America debt amounted to $230.48 per month. The total debt owed to Bank of America at the time of filing was greater than $15,500.00. See Debtor's Schedule F listing $15,601.38 and Proof of Claim #16 filed in Main Case in the amount of $15,755.99 by Round Up Funding.

Simple math shows the futility of the sham DMP. The payment of approximately $170.00 per month in principal to the Bank of America Debt in the sham DMP over 42 months would pay $7,140.00 of the Bank of America debt. In fact, as alleged in the Initial Complaint, two creditors actually demanded more money from Walker while the sham DMP was pending and one account was placed in collection during the sham DMP. Eventually, the Main Case was filed in an attempt to solve the financial problems that the Defendant had promised to solve with the sham DMP. This Adversary Proceeding was then filed to recover some of the funds paid by Walker to the Defendant for the sham DMP. While not a complete recovery, the prosecution of this action may allow a greater recovery for unsecured creditors than would have otherwise been possible without the prosecution of this suit. (The Plaintiff has approached the Chapter 13 Trustee regarding representation of the Estate in this preference action. The Trustee has orally agreed to allow the Plaintiff's attorney to prosecute this action and to turn over any recovered funds to the Chapter 13 Trustee for a pro-rata distribution to the unsecured creditors in the Chapter 13 case. The Plaintiff's attorney has not requested any fees for the prosecution of this action. )

Prior to the filing of the Adversary Proceeding, a review of the relevant documents provided to the undersigned attorney was performed. Included in that list of documents was the agreement entered into between the Defendant and Walker. While the agreement stated the Defendant was a non-profit organization, it was not entirely clear from the document if that status was still active. In fact, several non-profit debt management companies had their non-profit status revoked just prior to the filing of the Initial Complaint. Other research revealed that on September 18, 2008, the IRS revoked the non-profit status 41 of 41 allegedly non-profit debt counseling agencies. See http://ezinearticles.com/?IRS-Crushes-Credit-Counseling-Groups-Claiming-Non-Profit-Status&id=207067. See also attached Exhibit 1 to Plaintiff's Memorandum in Support of Motion to Amend of Recent Revocations by the IRS. As such, a search of the IRS database was performed to determine if the Defendant was still a

3

non-profit organization. When the search was performed, the Clearpoint organization did not appear on the list of non-profit organizations. A copy of the recreated search was attached as Exhibit 2 to the Plaintiff's Memorandum in Support of Motion to Amend. A search was performed under the terms "clear" and clear point". Due to the method of organizing the terms utilized by the IRS, the search did not reveal the Defendant on the pages accessed by the attorney for Walker.

Walker's attorney was also aware of the *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir.2005). In *Zimmerman*, the First Circuit found that the determination by the IRS that the non-profit status of the Defendant was not dispositive of whether the Defendant was exempt for purposes of the Credit Repair Organizations Act (CROA). See also, *Baker v. Family Credit Counseling Corp.*, 440 F.Supp. 2d 392 (E.D.Pa.2006). The CROA contains the same exemption provision for non-profit companies as the Bankruptcy Code for purposes of compliance with 11 U.S.C. § 526. Accordingly, the decision to file the initial complaint which included the 11 U.S.C. § 526 count was justified. This is true even though Clearpoint appears on the list of non-profit agencies on the IRS website.

At that point, the attorney for Walker proceeded with the filing of the suit to recover the funds paid by Walker into the sham DMP. When the Defendant filed its Answer and Motion to Dismiss, the proof of non-profit status letter attached to the Answer of the Defendant as Exhibit A was dated August 27, 2005. Due to the failure of the Defendant to attach a more recent non-profit certification, Walker's attorney was forced to do additional research to discover the true status of the non-profit designation. When that research was complete Walker reached out to the Defendant to dismiss the Adversary Proceeding based upon the newly discovered evidence. Instead, the Defendant attempted to extort $7,000.00 in attorney's fees from Walker in exchange for the dismissal of the Adversary Proceeding. See attached Exhibit 1. No statutory or contractual basis was given for the demand for attorney's fees by an allegedly non-profit organization. The attorney for Walker refused the offer and

4

instead filed the Amended Complaint to recover the preferential transfers made by Walker to the Defendant within 90 days of the Petition.

## THE AMENDED COMPLAINT IS JUSTIFIED BASED UPON
## THE DOCUMENTATION PROVIDED BY THE DEFENDANT

The Amended Complaint is based upon a preference action pursuant to 11 U.S.C. § 547. In order to prevail on its preference action, the Plaintiff must show under 11 U.S.C. § 547(b) that:

1. The transfer of the interest was to or for the benefit of a creditor;
2. On account of an antecedent debt;
3. Made while the debtor was insolvent;
4. Within 90 days of the petition; and
5. Enabled the creditor to receive more than it would have received if the case had been filed under Chapter 7 of the Bankruptcy Code.

See 11 U.S.C. § 547(b).

All of the above factors are present in this Adversary Proceeding. Initially, the funds paid by Walker to Clearpoint were to the benefit of a creditor. Clearpoint was a creditor of Walker due to the agreement for the sham DMP entered into between the parties. Creditor is defined by 11 U.S.C. § 101(10) as an "entity that has a claim against the debtor that arose before at the time of or before the order for relief . . .". Claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ." or a right to an equitable remedy for breach of performance. See 11 U.S.C. § 101(5).

The obligation to pay the sham DMP to Clearpoint gave rise to a claim. The very first paragraph of the sham DMP provides that "I agree to deposit $1127.00 per month . . ." This is a right to payment from Walker to Clearpoint in every sense of the definition of claim. Failure to comply with

the sham DMP payment provisions gave rise to the right by Clearpoint to terminate the sham DMP. See DMP, page 2, ¶ 7. Based upon the above, Walker was obligated to pay Clearpoint the sham DMP payment each month or be subject to termination of the sham DMP and other financial consequences as a result of the failure to pay the sham DMP.

Walker was also insolvent on the date of the payments to Clearpoint. In the schedules filed by Walker in the main Chapter 13 case, the assets were listed as having a value of $84,000. By contrast the debts were listed as exceeding $194,000.00 Clearly, Walker was insolvent within the 90 days pre-petition.

Finally, this creditor received more within the 90 days pre-petition than it was entitled to had the case been filed under Chapter 7. The nearly $3,300.00 worth of payments within the 90 days on account of the antecedent debt would have been recovered by the Chapter 7 Trustee and distributed pro-rata amongst the unsecured creditors in any Chapter 7 filing.

None of the exceptions to the preference action listed in § 547( c ) apply to the sham DMP or to Clearpoint. The sham DMP was not a normal business operation of the Debtor. The sham DMP was a one-time attempt by the Debtor to cure his financial problems. The sham DMP was also not a contemporaneous exchange for new value. The DMP Trust Fund Activity clearly shows a delay in the payment to the creditors once the monthly payment had been received by Clearpoint. The delay was typically 7 days. Such a delay would destroy any new value that Clearpoint could argue derived from the payment of the sham DMP payment each month. While the DMP payment sat in the trust account, the creditors continued to assess interest and fees to the account of Mr. Walker during the delay in remittance each month. Finally, the amount in controversy in the consumer debt preference action is over $600.00.

## LEGAL STANDARD FOR IMPOSITION OF SANCTIONS

Fed. R. Bankr. P. 9011(b) provides, among other things, that the signature of an attorney on "every petition, pleading, written motion, [or] other paper" filed with the court constitutes an implicit certification that to the best of his knowledge, information and belief, "formed after reasonable inquiry," the filing "... (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" or that (2) "the claims" or "other legal contentions" in the petition "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;...". Sanctions may only be awarded in two specific circumstances: 1) when the papers signed by the attorney are frivolous, legally unreasonable, or lacking in factual foundation, or 2) when the pleading is filed for an improper purpose. *Fed. R. Bankr. P. 9011(b)(1)-(2); In re Mroz, 65 F.3d 1567, 1572 (11th Cir. 1995)*. The standard is an objective one that requires a Court to find that the Complaint was objectively frivolous in light of the law or facts, and if so, then whether the signor should have know that it was frivolous at the time of filing. *Mroz*, at 1573.

As seen above, the unreasonable delay by the Defendant in filing a Motion for Sanctions related to the initial complaint should result in the denial of the Defendant's Motion for Sanctions related to the initial complaint. The amended complaint has also been accepted by the Court as an amended pleading by Order dated June 16, 2009. In that Order, the Court allowed the Amended Complaint and deemed the Counts in the initial Complaint to have been abandoned. See Docket #20.

The Defendant has also not withdrawn its Motion for Sanctions despite the Motion to Amend being granted and the Amended Complaint being allowed by the Court. In *Gwynn v. Walker (In re Walker)*; 532 F.3d 1304 (11th Cir. 2008) the 11th Circuit found that the filing of a motion for sanctions after the allegedly offensive pleading had been ruled upon by the Court could not form the basis for sanctions against the offending party. *Walker at 1309*. As found by the Court, "the Second, Fourth, and

7

Sixth Circuits have concluded that a motion under Federal Rule of Civil Procedure 11, which is "substantially identical" to Rule 9011, *Mroz, 65 F.3d at 1572*, cannot be filed '[i]f the court disposes of the offending contention before the twenty-one day 'safe harbor' period expires.' *Ridder v. City of Springfield, 109 F.3d 288, 295 (6th Cir. 1997); see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 389-90 (4th Cir. 2004) (en banc); In re Pennie & Edmonds LLP, 323 F.3d 86, 89 & nn.1-2 (2d Cir. 2003)*. As the Sixth Circuit explained, 'any other interpretation would defeat the rule's explicit requirements.' *Ridder*, 109 F.3d at 295.

While not exactly the same factual situation, the above cases illustrate that once a Court has ruled on an allegedly offending Motion (in this case the Motion to Amend which prompted the Motion for Sanction by the Defendant) the Defendant should immediately withdraw its Motion for Sanctions. If the Motion has not been withdrawn by the Defendant by the time of the scheduled hearing, the Court should deny the Motion for Sanctions related to the offending Motion and award attorney's fees to the Plaintiff as the prevailing party under Fed.R.Bankr.P. 9011. Additionally, the above cases related to Motions that were denied by the Court within the 21 day safe harbor provision. Walker's Motion to Amend was granted by the Court and the Amended Complaint appears to state both a factually and legally cognizable claim for the recovery of the preferential transfer made by Walker to the Defendant.

## CONCLUSION

The Plaintiff would request that the Court deny the Motion for Sanctions filed by the Defendant. The Defendant has failed to show that the Initial Complaint and/or the Amended Complaint are frivolous, legally unreasonable or filed for an improper purpose. To the contrary, both the Initial Complaint and the Amended Complaint were justified in law and fact at the time filed. Plaintiff would request attorney's fees as the prevailing party pursuant to Fed.R.Bankr.P. 9011.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Amended Complaint was furnished to Kimberly H. Israel, Esq., 6320 St. Augustine Rd., #2, Jacksonville, FL 32217 by filing a copy of the same in the CM/ECF system with the Clerk of the Court, this 13 day of July, 2009.

Law Offices of Mickler & Mickler

By: _____
Bryan K. Mickler
Florida Bar No. 091790
Attorney for Plaintiff(s)
5452 Arlington Expressway
Jacksonville, FL 32211
(904) 725-0822
(904) 725-0855 FAX

wp\docs\adversary proceedings\debt relief agencies\walker\sanctions response

9

# EXHIBIT 1

# HELD & ISRAEL
### ATTORNEYS AND COUNSELORS AT LAW
6320 ST. AUGUSTINE ROAD, SUITE 2
Jacksonville, FL 32217

www.heldandisrael.com

KIMBERLY HELD ISRAEL
khisrael@hilawfirm.com

EDWIN W. HELD, JR.
(1947 - 2008)

DIRECT LINE
904/493-5097

TELEPHONE
904/398-7038
888/398-7001

FACSIMILE
904/398-4283

April 6, 2009

**VIA E-MAIL & U.S. MAIL**

Bryan Mickler, Esq.
Law Offices of Mickler & Mickler
5452 Arlington Expressway
Jacksonville, FL 32211

> RE: Walker vs. ClearPoint Financial
> Adv. Pro. Case No.: 08-418
> (related to bankruptcy Case No. 08-bk-7670)
> U.S. Bankruptcy Court, Middle District of Florida

### CONFIDENTIAL & PRIVILEGED SETTLEMENT COMMUNICATION

Dear Bryan:

Following up on our exchange of communications before my car accident, I have conferred with my client and have been authorized to make the following settlement proposal for the full and final resolution of the above-referenced matter:

1) We will enter into a Settlement Agreement, which I can draft, which outlines the allegations that were pled and the nature of the claims asserted against ClearPoint, states that the claims were either dismissed by the Court or were otherwise without merit because Clearpoint is a 501(c)(3) entity, that ClearPoint is not paying any monies to Debtor for the resolution of these claims, and that your Firm is reimbursing ClearPoint's attorney's fees in a negotiated sum (as more fully set forth in paragraph 3 below) as part of the resolution of the adversary proceeding. This Agreement will not be made part of the record in the adversary proceeding. However, ClearPoint will need your and your client's permission to use the Settlement Agreement as

Bryan Mickler, Esq.
April 6, 2009
Page 2

required in audits and document requests related to its normal business practices;

2) You will file a Stipulation of Dismissal with Prejudice of the adversary proceeding, which will serve as the only public reflection of the disposition of the matter; and

2) You will pay $7,000.00 towards ClearPoint's incurred fees and costs for having to defend this action. Please note this represents two-thirds of ClearPoint's <u>actual</u> fees and costs, and is offered as a compromised sum for an expeditious resolution of this matter.

Failing a resolution along these lines, my client has instructed me to proceed with the filing of a motion for sanctions for the full amount of its fees and costs. My client has unfortunately had to divert its time, attention and monies towards defending this clearly frivolous suit, which funds would certainly have better been spent assisting individuals in their debt reduction efforts. Again, I would reiterate that even a cursory review of the Agreement signed by your client, which was the foundation for your Complaint against ClearPoint, would have revealed the fallacy with the allegations made therein. While we do not know yet whether it was your idea or Mr. Walker's idea to sue ClearPoint, the suit has absolutely no merit. Although Count I is already dismissed, Count II is likewise baseless, especially in light of the Court's order granting the motion to dismiss Count I. We are aware of at least a few occasions when Judge Funk has awarded sanctions for this type of litigation conduct.

I look forward to hearing from you at your earliest opportunity, but in no case later than **Friday, April 17, 2009**, at which point this settlement offer should be deemed withdrawn. Absent an amicable resolution by that date, we will proceed as outlined above.

Very truly yours,

HELD & ISRAEL

*Kim H. Israel*

Kimberly Held Israel

KHI/